

Lisa Isaacs
(917) 553-7977; li@lijblaw.com
Jonathan A. Bernstein
(917) 693-7245; jb@lijblaw.com

August 15, 2023

**By ECF**

The Honorable Analisa Torres
United States District Judge
United States Court House
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:    Heimann v. Lingua Franca NYC Inc.,
                 23 Civ.00954 (AT)

Dear Judge Torres:

      We represent Karen Heimann, the Plaintiff in this matter. On behalf of all parties, I write to submit the parties' joint request that the Court approve the parties' settlement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and to request that the case be reopened for that purpose.[1] The parties' Settlement Agreement and Plaintiffs' counsel's billing records are included with this letter motion. For the reasons that follow, the parties respectfully request that the Court approve this settlement, which represents a reasonable compromise of a bona fide dispute as well as a fair distribution of the settlement proceeds.

### Procedural History and Factual Allegations

      This lawsuit was brought by Karen Heimann against Lingua Franca NYC Inc. and Rachelle Hruska Macpherson to recover overtime premium pay under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the New York Labor Law. Specifically, Plaintiff alleged that, from the beginning of her employment in 2016 [2] until the end of 2022, she did some work in Lingua Franca's offices ("office work") and some work at her own home ("homework"). She was paid an hourly rate for office work. She was paid at piecework rates for the homework. Since mid-2019, Lingua Franca has paid overtime premium pay when stitchers performed more than 40 hours office work in a workweek. However, time spent on homework was not aggregated to time spent on

---

[1] On May 23, 2023, Your Honor dismissed the case without prejudice subject to reopening upon request of any party. Dkt.No. 22.

[2] Inasmuch as the longest applicable statute of limitations is 6 years, Plaintiff did not seek relief for hours worked prior to February 2017.

1250 Broadway · 36th Floor · New York · New York 10001
2108 Yardley Road · Yardley · Pennsylvania 19067
Tel 929·274·1151 | 215·493·1980 | Fax 917·210·3898
info@lijblaw.com | www.lijblaw.com

office work for purposes of calculating overtime. Accordingly, the gravamen of the complaint is that Ms. Heimann is entitled to an additional ½ of the regular rate of pay from week to week for all hours in excess of 40 (that is, the aggregate total of homework and office work).

On April 3, 2023, Plaintiff supplemented her complaint to allege post-complaint retaliation.

Defendants answered on April 25, 2023. They denied retaliation and alleged that, prior to February 2019, Plaintiff was an independent contractor and accordingly not entitled to overtime premium pay.

The matter was referred to the Southern District's mediation program. The parties having exchanged documents pursuant to the FLSA Pilot Program, the matter was successfully mediated on May 15, 2023. The parties subsequently executed a Settlement Agreement and Release ("Agreement"). They now seek the Court's approval of the Agreement.

The parties have evaluated their respective positions and the significant time and expense of continued litigation. The parties wish to avoid the considerable uncertainty and risks of litigation, as well as the expense and length of continued proceedings necessary to prosecute and defend this matter. Specifically, should this case proceed to discovery and trial, the Parties would spend several hundred hours on discovery, including the depositions of several Company managers and Plaintiff.  As part of the discovery process, the Parties would also be forced to undergo the painstaking process of attempting to recreate Plaintiff's time records based off of piece rate wages received.  This exercise would not only be extremely time consuming but also would likely lead to significant factual disputes regarding the number of overtime hours Plaintiff allegedly worked but was not compensated for.  Indeed, Defendants have posited that Plaintiff worked far fewer overtime hours than she alleged in the Complaint.  Both this cost and uncertainty weigh in favor of a finding that the Parties' settlement at this stage is a reasonable compromise.

Moreover, a settlement at this juncture avoids the uncertainty as to the key unresolved legal questions which dramatically impact Plaintiff's potential recovery in this case.  Defendants maintain that Plaintiff was lawfully classified as an independent contractor prior to 2019 and therefore is not entitled to recover for any alleged overtime hours worked during this period.  While Plaintiff disagrees, and asserts she is entitled to damages for this period, this dispute creates tangible risk for both Parties.  Lastly, the Agreement presented to the Court is the product of arms-length negotiations between experienced counsel, with significant assistance from Jeffrey Kimmel, Esq., a mediator in the Southern District Mediation Program. [3] For these reasons, and those set forth below, the Parties believe the settlement reached represents a fair compromise, appropriately balancing the guaranteed significant additional costs of litigation and the risks of a less favorable result. A copy of the Agreement is annexed as Exhibit 1.

---

[3] Plaintiff's counsel, Jonathan Bernstein, has been litigating FLSA cases in this district for over 20 years. Defense counsel, Adam Gross and Melanie Ross, have been litigating FLSA cases in this district for numerous years. All counsel affirmatively state that the Settlement is the product of arms-length bargaining untainted by fraud or collusion.

### The Overtime Claim

Defendants produced payroll records and records of piecework performed 2020-22. Plaintiff and Defendants prepared separate, necessarily approximate, calculations of the overtime unpaid during that period (the piecework assignments were for custom, as opposed to standardized, work). Plaintiff's calculations yielded a figure of just over $5000 plus liquidated damages. Defendants' calculations yielded a figure of just under $3900; they contended that liquidated damages were not available.

As to the pre-2019 period, Defendants took the position that Plaintiff, who was purportedly an independent contractor, was entitled to *no damages*. Thus, Defendants believe their likely worst-case scenario at trial would be limited to under $8,000 in damages, inclusive of liquidated damages. Plaintiff took the position that she was an employee, that she worked approximately the same number of hours in 2017-19 as she had in 2020-22 and that her damages for the two periods were approximately equal. Thus, the settlement in this case, even after attorneys' fees, represents a more than 100% recovery of Plaintiff's alleged lost wages.

### The Retaliation Claim

Shortly after Ms. Heimann supplemented her complaint to allege post-complaint retaliation, *i.e.*, that Defendants had not offered her any piecework since the day that process was served, defense counsel provided a copy of a text message indicating that the onus was on her to notify Lingua Franca when she returned from out of town and was ready to accept more work. Since the text contradicts a roughly contemporaneous email exchange, Ms. Heimann had simply forgotten about it. Moreover, Ms. Heimann does not wish to accept work from Lingua Franca in the future. Because of the documentation produced by Defendants, demonstrating the confusion upon which Plaintiff's retaliation claim was premised, she is accordingly willing to dismiss the retaliation claim for no consideration.

### Legal Standard for Approval of Settlement

In accordance with the FLSA's mandatory provisions, an employer cannot settle claims of unfair wages without approval of the settlement from the Department of Labor or a United States district court. *Ramirez v. AA BC Bakery Cafe Corp.*, 2022 US Dist LEXIS 93376 at *2 (S.D.N.Y. May 24, 2022 (Torres, J.) citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). Where, as here, the parties seek approval from the district court, they must establish the settlement is "fair and reasonable." *Ramirez, citing Persaud v. D & H Ladies Apparel LLC*, No. 16 Civ. 5994, 2017 U.S. Dist. LEXIS 71010, 2017 WL 1944154, at *1 (S.D.N.Y. May 8, 2017). To determine whether a settlement is fair and reasonable, courts consider:

> the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the

> product of arm's-length bargaining between experienced counsel;
> and (5) the possibility of fraud or collusion.

*Ramirez* at *2-3, *citing Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). In addition, courts should not approve agreements that contain "highly restrictive confidentiality provisions" and "overbroad" releases of claims. *Id.* at *3, *citing Cheeks*, 796 F.3d at 206. The Second Circuit directed courts to bear in mind that "the vast majority of FLSA cases . . . are simply too small, and the employer's finances too marginal, for proceeding with litigation to make financial sense if the district court rejects the proposed settlement." *Cheeks*, 796 F.3d at 206-07 (quotation marks omitted).

In *Cheeks*, the Second Circuit provided guidance as to the types of provisions that contravene the FLSA's remedial purpose of preventing abuses by unscrupulous employers, and remedying the disparate bargaining power between employers and employees. *Id.* at * 5. The Second Circuit specifically disapproved of settlement agreements containing:

> (1) a battery of highly restrictive confidentiality provisions in strong tension with the remedial purposes of the FLSA; (2) an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues; and (3) a provision that would set the fee for plaintiff's attorney without adequate documentation to support such a fee award. *Id.* Courts in this Circuit also commonly decline to approve settlements containing overbroad non-disparagement provisions.

*Id.* (citations, quotations and alterations omitted).

In this case, the *Wolinsky* factors are satisfied. As set forth in greater detail above, the payment of $17,000 reflects a reasonable compromise in view of the possible recovery (more than 100% of Plaintiff's alleged lost wages according to Plaintiff's calculations and more than 200% of her lost wages based on Defendants' calculations), the fact-intensive inquiry into the amount of time spent processing each garment and both sides' risk of loss with respect to the employee/independent contractor issue. It should be noted that, in *Ramirez*, this Court approved an FLSA settlement amount reflecting approximately 46% of Plaintiffs' "best-case recovery scenario." *Ramirez* at * 4.[4] In addition, the parties were represented by experienced counsel at court-annexed mediation, which indicates that fraud and collusion are unlikely. *Id.* at * 5-6.

The central policy aim underpinning *Cheeks*—protecting FLSA plaintiffs—guides the review of attorney's fees in light of the risk that "the interest of plaintiffs' counsel in counsel's

---

[4] In that case, the Court ultimately rejected the proposed settlement on the basis of overbroad releases. Further, time allocable to the retaliation claims is shown as "non-billable." As a result of Plaintiff's counsel's ministerial error, the billing records annexed to the first and second iterations of this motion did not show non-billable time and segregate time spent on the retaliation claims from other time. The errors have been corrected. Ex. 2 at 4.

own compensation will adversely affect the extent of the relief counsel will procure for the clients." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). A one-third portion of the settlement amount is generally accepted by courts in this district for attorneys' fees in FLSA cases. *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 230 (S.D.N.Y. 2016) (Engelmyer, J.). Courts nevertheless require contemporaneous billing records to cross-check the reasonableness of the fees requested. *E.g.*, *Griffith v Sterling-Grant Inc.*, 2017 U.S. Dist LEXIS 127379, at *12 (E.D.N.Y. Aug. 9, 2017) (Amon, J.).

In this case, plaintiff's counsel fee of one-third is reasonable. Plaintiff's counsel's annexed billing records (Exhibit 2) show hourly fees (calculated at $400 per hour) in excess of $12,000 and disbursements for the court's filing fee and service of process.[5]

### The Release

The Settlement Agreement contains a release of FLSA and New York Labor Law wage and retaliation claims by Plaintiff only flowing to Defendants only. That is, no non-wage claims and no absent Defendants are released; Plaintiff releases only her own claims (and not those of, *e.g.*, her heirs and assigns). The presence of any of these extraneous releases militates against approval of the Agreement. *Ramirez* at * 5-6.  The Settlement Agreement Contains a mutual release of all claims, known and unknown by Defendants against Plaintiff.

The Settlement Agreement contains no confidentiality or non-disparagement provisions that would militate against approval of the Agreement. *Id.*

Respectfully submitted,

Jonathan Bernstein

4859-5578-1239, v. 1

---

[5] Time allocable to the retaliation claims is shown as "non-billable."